UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VICTOR J. MAROLDA, III,<br>　　　Plaintiff,<br><br>　　　　v.<br><br>TISBURY TOWING &<br>TRANSPORTATION CO., INC.,<br>　　　Defendant, Third-Party Plaintiff,<br><br>　　　　v.<br><br>CAPE COD AGGREGATES CORP.,<br>　　　Third-Party Defendant, Third-<br>　　　Party Plaintiff,<br><br>　　　　v.<br><br>EQUIPMENT ERECTION SALES AND<br>SERVICES COMPANY, INC., JEFFREY<br>P. MARKLE, THERMO RAMSEY, LLC,<br>and THERMO FISHER SCIENTIFIC,<br>INC.,<br>　　　Third-Party Defendants. | CIVIL ACTION<br>NO.  4:19-10496-TSH |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION TO AMEND THEIR COMPLAINT (Docket No. 134)**

**October 21, 2022**

**HILLMAN, D.J.**

Victor Joseph Marolda, III ("plaintiff") filed a third-party complaint against Cape Cod Aggregates ("defendant") alleging, among other things, negligence (Docket No. 101). Plaintiff now moves to amend his complaint to include punitive damages. (Docket No. 134). For the reasons below, the motion is **_granted_**.

## Background

The background facts relevant to this motion can be found in this Court's order on third-party defendant's motion to dismiss for lack of personal jurisdiction. (Docket No. 120). Plaintiff was involved in an accident when one of the barges of his employer, Tisbury Towing ("TTT"), capsized. Plaintiff alleges the capsizing was the result of overloading the barge with "aggregate," such as sand and gravel, which in turn was the result of a defective scale system used by the loading facility where the aggregate was placed. As is relevant here, the defendant owned and operated that loading facility and the plaintiff previously alleged that the defendant knew that the scale was defective, took no steps to warn customers of its defective nature, and that customers relied on the scale to determine if they were overloading their vessels.

During discovery, plaintiff learned two additional facts relevant to this motion. First, he learned that defendant was aware that the scale was not just defective, but that it consistently under-weighed aggregate. Second, he learned that employees and contractors for defendant suggested alternatives—including weighing the aggregate in the "frontloaders" that deposit the aggregate—that were rejected.

## Standard of Review

Contrary to the briefs filed by both parties, the motion to amend comes after a scheduling deadline and is therefore governed by Rule 16(b)(4)'s "good cause" standard, which "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (cleaned up).

## Analysis

1. *The timeliness of the motion*

The depositions that form the basis for the motion to amend were taken on April 4 and April 8, 2022. The motion to amend was made June 22, 2022. Moving two months after the depositions is not as speedy as it could be, but it does not strike the Court as dilatory.

Nonetheless, a diligent motion to amend is not allowed if it would be "futile." *Cf. Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013). "The appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case." *Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment," the standard of review is equivalent to that of a 12(b)(6) motion. *Id.*

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### 2. Choice of Law

Defendants argue the motion is futile because Massachusetts law controls. In Massachusetts, punitive damages are not available in the absence of statutory authorization. *See*

*Aleo v. SLB Toys USA, Inc.*, 466 Mass. 398, 412, 995 N.E.2d 740, 753 (2013). Punitive damages are generally available in maritime law. *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 421 (2009) ("The general maritime law has recognized . . . for more than a century the duty of maintenance and cure and the general availability of punitive damages.") (citing *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001)); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489-95 (2008) (discussing the history of punitive damages). That general availability does not hinge on a particular cause of action, nor are the claims barred by federal statute. *Cf. Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 139-40 (1st Cir. 2017) (legislation barring punitive damages in oil spill cases does not bar punitive damages in *all* maritime law cases).

The substantive law[1] that applies to these torts—as determined in previous orders—is maritime law. That is true even where a case is on the "civil side" of the docket. *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir. 1988) ("[9(h)] permits a plaintiff whose claim is cognizable under either jurisdiction to identify his claim as an admiralty claim to obtain certain procedural benefits traditionally available under admiralty jurisdiction. Rule 9(h) does not authorize a plaintiff to choose the substantive law that applies to his claim.") (citations omitted); *see also Pope & Talbot v. Hawn*, 346 U.S. 406, 411 (1953); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 88 (1946). *Carey* parallels the facts here: the plaintiff was injured at sea, sued under diversity jurisdiction to obtain a jury trial, but maritime law applied to the substantive claims. 864 F.2d at 203. The defendant's argument that the plaintiff here pleaded these as "civil" claims

---

[1] The availability of punitive damages is a substantive, not procedural, issue. *See, e.g.*, *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 (1996) (noting the parties agree a state statutory cap on damages would be substantive law for *Erie* purposes).

misses the point: the plaintiff may only choose which "side" of the docket the case is brought on, not which law applies.

Although some cases require a "delicate accommodation of federal and state interests," substantive state law will not apply if it is "incompatible" with maritime law. *Carey*, 864 F.2d at 207. In Massachusetts, a statute is required for a court to consider punitive damages. In maritime cases, a statute is required for a court to categorically deny them. That aspect of Massachusetts law is "incompatible" with maritime law as it flips that presumption on its head and is therefore not applicable to this action.

3. *Sufficiency of the Allegations*

Here, taking the pleadings as true and drawing all reasonable inferences in the plaintiff's favor, he has plausibly alleged "willful, wanton, and reckless" actions such that punitive damages would be available. *Exxon*, 554 U.S. at 493 (2008). First, defendant did not just know that the scale was generally defective, it knew the scale under-weighed. Thus, coupled with the original allegation that defendant knew its customers used the scale as a safety mechanism, defendant knew its customers were overloading their ships and took no action to warn them. Second, defendant's employees and contractors put forward an alternative—putting scales on the "frontloaders" themselves—which was not implemented.

Defendant argues that the scale was not used to determine if the barge was accurately loaded, only for invoicing customers, so it cannot be considered willful. This does not contradict plaintiff's allegation that defendant knew their customers used the scale for safety reasons. And even if that fact is disputed, that dispute must be resolved in favor of the plaintiffs at this stage.

Defendant also argues that TTT (plaintiff's employer) was the proximate cause of the injury because TTT's captain determined the ship was safe after loading. Whether the captain's

actions were an intervening cause turns on whether his actions were foreseeable to the defendant. *Napier v. F/V DEESIE, Inc.*, 454 F.3d 61, 68 (1st Cir. 2006). The Court cannot say, as a matter of law, it was unforeseeable that a captain might, having seen or having been informed of the erroneous readout on the scale, make a mistake in judging whether the boat was safely loaded. *See id.* at 69 (noting that issues of proximate cause, especially when they involve intervening causes, are usually best left to the factfinder).

Finally, defendant argues its attempts to "diagnose and resolve the issues with the Scale" were "reasonable." While the Court will not punish a company for attempting to diagnose its tools and keep them in working order, the allegations here are that the defendant brushed aside safer alternatives while the scale was being fixed and made no attempt to alert its customers it was consistently under-weighing materials despite knowing they used it to determine if their vessels were accurately loaded. That is not "reasonable."

## Conclusion

For the reasons stated above, the motion to amend is ***granted***.

**SO ORDERED**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**